UNITED STATES of America, Plaintiff,

v.

Stephen James HARRIS, Defendant.

Crim. No. CR–70 149 RFP.

United States District Court,
N. D. California.

April 26, 1971.

James H. Daffer, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Jerry E. Berg, San Jose, Cal., for defendant.

## MEMORANDUM

PECKHAM, District Judge.

Defendant, Stephen James Harris, is charged with violation of 50 U.S.C. App. § 462, refusal to submit to induction. The relevant facts are as follows: On October 11, 1966, the defendant registered at the San Jose, California, office of the Selective Service System and was assigned to Local Board #60. Harris was classified 1-A on December 12, 1969, and was ordered for an Armed Forces Physical Examination in February of 1969. He was found acceptable for induction.

Within one month of the examination, on March 19, 1969, Harris initiated and entered into an agreement for voluntary induction into the Armed Services, SS Form 254,[1] at the Los Angeles Local Board Group "J" office in San Gabriel, California. The application for voluntary induction was then forwarded to the defendant's local board in San Jose.

On April 4, 1969, defendant mailed a letter to his Local Board reaffirming his desire to volunteer for induction. He stated, in part: "I've volunteered for the draft * * * with a friend of mine. We would like to be installed on the Buddy System if possible * * *" Between the date of receipt of defendant's Application for Voluntary Induction, March 21, 1969, and the date of the mailing of the order to report for induction, April 14, 1969, Local Board #60 received no other communication from Harris.

Pursuant to Harris' Application for Voluntary Induction, Local Board #60 processed him as a volunteer and mailed to him, on April 14, 1969, an order to report for induction. Harris was to report to the induction station on April 29, 1969. He failed to report. However, on this same day, April 29, 1969, defendant appeared at his Local Board in San Jose and explained that he had had to hitch-hike from Colorado; he requested that he be rescheduled for induction.

Subsequently, Local Board #60 mailed Harris a letter instructing him that he was still under his April 14, 1969, order to report for induction and that he should report for induction on June 29, 1969. Harris reported to the Induction Station on that date, but refused to submit for induction.

The defendant may be found guilty of violating 50 U.S.C. App. § 462 only if he refused to submit to a valid induction order. United States v. Canepa, 319 F.Supp. 1319 (N.D.Cal.1970). Defendant argues that his induction order was not valid because he had entered into a voluntary agreement to accelerate his induction, which agreement could be rescinded at any time prior to his induction. He asserts that by refusing to submit to induction, he was rescinding his voluntary act and that therefore the induction order was not binding upon him.

Sections 4(c)(3) and 4(c)(4) of the Military Selective Service Act of 1967 provide the statutory authority for the opportunity of voluntary induction into the Armed Forces. However, neither the Act nor the Selective Service regulations promulgated thereunder provide any guidance for the resolution of

---

1. Application for Voluntary Induction:

I hereby apply for voluntary induction into the Armed Forces of the United States under the provisions of the Universal Training and Service Act, as amended. For this purpose, I waive all rights of personal appearance and appeal if I am classified as available for service, and I consent to my induction at any time convenient to the Government. I understand that I may not be ordered to report for a preinduction armed forces physical examination, but that I may be ordered to report to an Armed Forces Induction Station for immediate induction. I am also aware of the possibility that I may be found not qualified for induction into the Armed Forces. Selective Service Form 254 (Revised 10–29–64).

the question now before this Court. Case authority is also of no assistance. Voluntary induction differs from enlistment.[2] Hence, cases dealing with enlistment contracts are of little relevance to a construction of the agreement herein. Therefore, this Court must turn to the general body of contract law for a proper analysis of the voluntary induction agreement.

In signing his Application for Voluntary Induction, Harris sought to accelerate his date of induction. He consented to his induction "at any time convenient to the Government * * *" and understood that he could be "ordered to report * * * for immediate induction." In essence, the defendant offered himself for immediate induction into the Armed Services. He was requesting that he be ordered to report for induction prior to the time his name would have appeared in the normal order of call. He promised to waive his normal order of call if the Government would send him an accelerated order to report for induction.

Harris thus offered to enter into a unilateral contract. See Corbin on Contracts, § 21 (One Volume Edition, 1952). He was free to revoke this offer at any time prior to its acceptance by the Government. See Corbin, *supra*, § 38. However, he did not exercise his power of revocation, and the Government, by sending him an accelerated order to report for induction, accepted his offer and performed the contract at the same time. See Corbin, *supra*, §§ 62, 63.

This contract was binding and valid. Both parties were of the requisite legal capacity, and there was no coercion, duress, or fraud with regard to its formation. There was mutual consideration: Harris avoided the pre-lottery uncertainty of his normal induction date and gained early fulfillment of his military obligation so that he could then begin a career and/or start a family without facing an interruption for military service; the Government benefitted by reducing the number of non-volunteers it would have to call into the Armed Forces.

In sum, Harris contracted for an accelerated induction date and the Government performed the contract by sending him the April 14, 1969, order to report for induction. 32 C.F.R. 1631.7. Although it is true that his Local Board may have been free to rescind his order to report for induction had the defendant so requested, nonetheless, since the underlying contract for accelerated induction had already been performed, Harris, himself, was powerless to rescind that order.

A contrary ruling in this case would render the procedures of voluntary induction legally meaningless. Furthermore, it would convert the process of voluntary induction into a possible means of delay and evasion of the Military Selective Service Act.

In accordance with the reasoning above, defendant's motion for judgment of acquittal is denied. The defendant is found guilty as charged.

---

2. Voluntary induction simply serves to accelerate the registrant's induction date. His position within the Armed Forces is similar to that of an inductee. One who signs an enlistment contract, however, enjoys a different status within the Armed Services, and as an enlistee has differing rights and responsibilities than an inductee. See e. g., 10 U.S.C. §§ 501 et seq., 3251 et seq., 5531 et seq., and 8251 et seq., on enlistments.